JESSICA M. SIMON – SBN 277581
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Blvd., 12th Floor
Encino, California  91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
Email: jsimon@hrhlaw.com

Attorneys for Secured Creditor,
HARVEST SMALL BUSINESS FINANCE, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>PRESENTATION MEDIA, INC.,<br><br>f/d/b/a Tandem Exhibits,<br>f/d/b/a NC Nielson Properties, LLC,<br>f/d/b/a Adage Graphics, f/d/b/a Classic Letters,<br>f/d/b/a Colortek Digital, and<br>f/d/b/a ESP Exhibits<br><br>Debtor. | Chapter 11<br><br>CASE NO. 2:25-bk-17723-BB<br><br>**OBJECTION OF HARVEST SMALL BUSINESS FINANCE, LLC TO DEBTOR'S ORIGINAL DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN**<br><br>(*Declaration of Brett Donahue filed concurrently herewith*)<br><br>Hearing<br>Date: May 13, 2026<br>Time: 1:00 p.m.<br>Place: 1539 or via Zoom |

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

Objection to Disclosure Statement

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. BRIEF BACKGROUND ............................................................................................ 1

III. OBJECTIONS............................................................................................................. 4

    A. Debtor's Disclosure Statement Fails to Provide Adequate Information as Required By Section 1125 of the Bankruptcy Code and Should Be Denied ........................................................................................................ 4

        1. The Disclosure Statement Fatally Omits the Pre-Petition Merger and Resulting Due-on-Sale Acceleration...................................................... 4

        2. The Disclosure Statement Improperly Assumes the Availability of Cramdown Relief under Section 1129(b) of the Bankruptcy Code ........................................................................................................... 6

        3. The Disclosure Statement Provides a Flawed Liquidation Analysis, as Required by Section 1129(a)(7) of the Bankruptcy Code ........................................................................................................... 8

        4. The Disclosure Statement Provides a Flawed Feasibility Analysis, as Required By 1129(a)(11) of the Bankruptcy Code ..................... 8

        5. The Disclosure Statement Fails to Disclose That Contractual Attorneys' Fees and Costs Cannot be Nullified in a Plan............................. 10

        6. The Disclosure Statement Discloses an Inappropriate Burden on Secured Creditors to File Amended Claims...................................................... 11

        7. The Disclosure Statement Discloses Improper Third-Party Releases............................................................................................................ 11

    B. Approval of the Debtor's Disclosure Statement Should be Denied as the Debtor's Plan is Patently Unconfirmable. ........................................................ 12

        1. The Plan is Not Feasible Under 1129(a)(11) of the Bankruptcy Code ........................................................................................................... 12

        2. The Plan is Not in the Best Interest of Creditors as Required by Section 1129(a)(7) of the Bankruptcy Code ................................................. 13

        3. The Plan Is Not Fair and Equitable Under 1129(b)(2)(A) of the Bankruptcy Court...................................................................................... 14

        4. The Plan Improperly Shifts the Burden on Creditors Upon Default.............................................................................................................. 16

IV. RESERVATION OF RIGHTS ................................................................................ 16

V. CONCLUSION……………………………………………………………………16

## TABLE OF AUTHORITIES

Page

Cases:

F.H. Partner v. Investment of the Southwest, Inc. (In re Investment Co. of the
  Southwest, Inc.), 341 B.R. 298 (10th Cir. 2006) ................................................ 8, 13, 15

Fed. Savs. & Loan Ins. Corp. v. D & F Constr., Inc. (In re D & F Constr. Inc.),
  865 F.2d 673 (5th Cir. 1989) ..................................................................................... 14, 15

Harrington v. Purdue Pharma L.P.,
  603 U.S. 204 (2024)....................................................................................................... 11

Hewit v. Berlin Mach. Works,
  194 U.S. 296 (1904)....................................................................................................... 11

In re A Partners, LLC,
  344 B.R. 114 (Bankr. E.D. Cal. 2006)............................................................................ 12

In re Anthony's Rest., Inc.,
  44 B.R. 542 (Bankr. E.D. Pa. 1984) ................................................................................. 5

In re Arnold,
  471 B.R. 578 (Bankr. C.D. Cal. 2012)............................................................................ 12

In re Beyond.com Corp.,
  289 B.R. 138 (Bankr. N.D. Cal. 2003) ........................................................................... 12

In re Cardinal Congregate I,
  121 B.R. 760 (Banr. S.D. Ohio 1990)........................................................................... 4, 12

In re Circle K Corp.,
  165 B.R. 649 (1994) ....................................................................................................... 11

In re Curiel,
  651 B.R. at 567 ..................................................................................................... 8, 9, 15

In re Dalessio,
  74 B.R. 721 (1987).................................................................................................... 10, 11

In re Espanol,
  509 B.R. 422 (D. Conn. 2014) ......................................................................................... 5

In re Ferretti,
  128 B.R. 16 (Bankr. D. N.H. 1991) .................................................................................. 4

In re Investment Co. of the Southwest, Inc.,
  341 B.R. at 311 ................................................................................................................ 15

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

ii

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

In re Kord Enters. II,
 139 F.3d 684 (9th Cir. 1998) ............................................................................................. 10

In re Las Vegas Monorail Co.,
 462 B.R. 795 ....................................................................................................................... 15

In re Linda Vista Cinemas, L.L.C.,
 442 B.R. 724 (Bankr. D. Ariz. 2010)................................................................................. 15

In re Main Street AC, Inc.,
 234 B.R. 771 (Bankr. N.D. Cal. 1999) .............................................................................. 12

In re Melbell Assocs., Inc.,
 99 B.R. 31 (Bankr. E.D. Cal. 1989)............................................................................. 10, 11

In re Metrocraft Publishing Services, Inc.,
 39 B.R. 567 (Bankr. N.D. Ga. 1984) ................................................................................... 4

In re Miami Ctr. Assocs., Ltd.,
 144 B.R. 937 (Bankr. S.D. Fla. 1992).................................................................................. 14

In re Mullin,
 433 B.R. 1 (2010)................................................................................................................ 5, 6

In re Pecht,
 57 B.R. 137 (Bankr. E.D. Va. 1986).................................................................................... 12

In re Reilly,
 71 B.R. 132 (Bankr. D. Mont. 1987) .................................................................................... 4

In re Scioto Valley Mortg. Co.,
 88 B.R. 168 (Bankr. S.D. Ohio 1988)................................................................................... 4

In re Silberkraus,
 253 B.R. 890 (Bankr. C.D. Cal. 2000)................................................................................ 12

In re Tewell,
 355 B.R. 674 (Bankr.N.D.Ill.2006) ...................................................................................... 5

In re TM Vill., Ltd.,
 No. 18-32770-BJH, 2019 WL 1004571, at *9 (Bankr. N.D. Tex. Feb. 28, 2019) ...................... 5

In re Trevarrow Lanes, Inc.,
 183 B.R 475 (Bankr. E.D. Mich. 1995) ............................................................................... 13

In re Unichem Corp.,
 72 B.R. 95 (Bankr. N.D. Ill. 1987) ....................................................................................... 3

Objection to Disclosure Statement

In re Wallen,
    15 B.R. 559 (Bankr. C.D. Cal. 1981)...................................................................................... 5

Kord Enterprises II,
    139 F.3d at 687 ...................................................................................................................... 11

Pizza of Hawaii v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),
    761 F.2d 1374 (9th Cir. 1985) ............................................................................................... 12

Santa Clara Savings & Loan Assn. v. Pereira,
    164 Cal.App.3d 1089 (1985) ................................................................................................... 5

Till v. SCS Credit Corp.,
    541 U.S. 465 (2004)............................................................................................................... 15

Statutes:

11 U.S.C. § 1125(a)(1)................................................................................................................. 3

11 U.S.C. § 1129(a) ................................................................................................................... 12

11 U.S.C. § 1129(a)(7).......................................................................................................... 8, 13

11 U.S.C. § 1129(a)(7)(A)(ii) ................................................................................................... 13

11 U.S.C. § 1129(b) ................................................................................................................ 6, 7

11 U.S.C. § 1129(b)(1) ............................................................................................................... 6

11 U.S.C. § 1129(b)(2)(A).......................................................................................................... 14

11 U.S.C. § 1129(b)(2)(A)(i)(II)................................................................................................. 7

11 U.S.C. § 1141(d) ................................................................................................................. 16

11 U.S.C. § 1142....................................................................................................................... 16

11 U.S.C. § 362(c)(2)(C) .......................................................................................................... 16

11 U.S.C. § 506......................................................................................................................... 11

11 U.S.C. § 506(b) ............................................................................................................. 10, 11

11 U.S.C. § 524......................................................................................................................... 16

12 U.S.C. § 1701j-3 .................................................................................................................... 5

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

iv

Other Authorities:

5 Collier on Bankruptcy ¶ 1129.02[11] at 1129 (15th ed. 1984) .................................................... 12

7 Collier on Bankruptcy ¶ 1129.02[7] (Alan N. Resnick & Henry J. Sommer eds.,
     16th ed.) ................................................................................................................................ 13

Garn-St. Germain Depository Institutions Act of 1982 .................................................................. 5

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

Objection to Disclosure Statement

Senior secured creditor Harvest Small Business Finance, LLC ("Harvest") hereby files this objection ("Objection") to the Original Disclosure Statement Describing Chapter 11 Plan ("Disclosure Statement," Dkt. 139) filed by the Debtor Presentation Media, Inc. ("Debtor").  Harvest timely files this Objection because the Disclosure Statement does not satisfy the minimum requirements of Section 1125 of the United States Bankruptcy Code ("Bankruptcy Code"), as follows:

## I.   INTRODUCTION

The Disclosure Statement should be denied because it fails to provide "adequate information" concerning the merger-driven acceleration of Harvest's debt pre-petition, omits material information on Debtor's financials, razor-slim operating margins, and misleading cash on hand to permit an informed decision about the Plan, promotes solicitation of a Plan that improperly reallocates default, refinancing, and market risk to Harvest and other secured creditors for three decades (with an undisclosed mechanism to fund an over $2.6 million balloon payment, improperly disclosed at $2 million), and contains unlawful terms (e.g., nullifying legal fees and including third-party releases). Approval should be denied.

From the outset of this case, a central issue has been Debtor's pre-petition merger of Harvest's borrower, NC Nielson Properties, LLC ("Nielson") into the Debtor, formerly only Harvest's guarantor. In addition to transforming a solvent borrowing entity into an insolvent one and rendering Harvest's guarantor illusory, it triggered the due-on-sale clause in Harvest's Deed of Trust, causing all indebtedness to become immediately due and payable pre-petition. The Disclosure Statement fails to disclose this acceleration or propose any repayment terms of the fully matured debt.

The Disclosure Statement further seeks solicitation of a patently unconfirmable Plan premised on an extreme cramdown that strips Harvest (and other secured creditors) of its bargained-for protections and has a high probability of default.  Because the Disclosure Statement omits critical information to allow a hypothetical investor to make an informed decision about it, and the Plan is patently unconfirmable, the Disclosure Statement should be denied.

## II.   BRIEF BACKGROUND

1.   The background of this case has been extensively briefed with supporting evidence in Harvest's objection to Debtor's use of cash collateral and stay relief motion.  *See* Dkts. 51-52, 65-67.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

Harvest incorporates that background and the evidence in support in this objection, as though fully set forth herein.[1]

2.      In sum, in January 2024, Harvest made a loan to Neilson in the original principal amount of $3,285,800.00, secured by a first priority Deed of Trust, Instrument No. 20240029307 (the "DOT") against Neilson's real property located at 1910-1920 West 144th Street, Gardena, CA 90249 (the "Property").  (Yoo Decl., Dkt. 66, ¶¶ 7-8, Ex. 3.)  Debtor absolutely and unconditionally guaranteed Neilson's obligations under terms of the DOT, which guaranty is now illusory based on Debtor's pre-petition merger of Neilson.  (Yoo Decl., Dkt. 66, ¶¶ 10, 14.)

3.      Pre-petition, Neilson defaulted on its loan obligations to Harvest by failing to pay amounts due and owing as of April 1, 2025 and thereafter, and Harvest has not received any post-petition payments.  Debtor never cured those defaults.  (Yoo Decl., Dkt. 66, ¶ 11.)  Harvest has not received any payments on its loan for over one year.  As of April 24, 2026, Neilson (now the Debtor) owes Harvest at least $3,714,808.66, including principal of $3,282,857.78, interest of $357,629.20, late fees of $30,576.00, and miscellaneous fees of $43,745.68, plus further interest accruing at the per diem rate of $901.87, fees and costs.  (See id.; Declaration of Brett Donahue ["Donahue Decl."], ¶ 8.)  Monthly unpaid payments are $29,120.00, plus further fees and costs.  (Id., ¶ 9.)  At least $451,515.68 (April 2025-April 2026) is owed in arrears, including monthly payments of $378,650.00, $29,120.00 in late fees, and $43,745.68 in miscellaneous fees.  (Id.)  The current interest rate under the Note is 9.890% fixed.  (See Proof of Claim, No. 21.)

4.      Pre-petition, Harvest caused a Notice of Default and Election to Sell ("NOD") to be recorded against the Property.  (Yoo Decl., Dkt. 66, ¶ 12.)  Before the Notice of Sale could be recorded, Debtor notified Harvest of the bankruptcy petition, thus staying the foreclosure, and, for the first time, of the pre-petition merger (which occurred 5 days before the petition date), in violation of the loan documents.  (Id., ¶¶ 13-14.)

---

[1] Harvest respectfully requests this Court to take judicial notice of the records in this case, including Dkts. 51-52, 65-67, pursuant to Federal Rules of Evidence 201, as made applicable by Fed. R. Bankr. P. 9017, as matters of public record capable of accurate and ready determination that cannot be reasonably questioned.

5.      The pre-petition merger triggered the due on sale clause in the DOT, which provides that any transfer of an interest in the Property, including any restructuring of Neilson "whether **by merger**, division or otherwise," triggers the due on sale clause. (Yoo Decl., Dkt. 66, ¶ 17, Ex. 3 [DOT, p. 2] (emphasis added).)

6.      Debtor's Disclosure Statement discloses a plan to pay Harvest's claim over 30 years at a reduced interest rate 6.5%, with significantly reduced payments of $12,000.00 per month beginning in Month 5 of the Plan, increasing to $15,000.00 in Year 3, and increasing to $25,000.00 in Year 8, with a balloon payment of $2,004,855.83 (estimated) after 360 months (or 30 years).  *See* Disclosure Statement, Class No. 1, p. 12.

7.      A comparison follows:

| Period | Debtor's Proposed Plan Payments (6.5%) | Total Due Under Plan | Contract Loan Payments (9.89%) | Total Due Under Loan |
|---|---|---|---|---|
| Years 1-2 | First Payment Starting in Month 5, then $12,000/month | $228,000 | $29,120/month | $698,880 |
| Years 3–7 | $15,000/month | $900,000 | $29,120/month | $1,747,200 |
| Years 8–30 | $25,000/month | | $29,120/month | |
| Balloon at Maturity | **$2,004,855.83 (which is over $2.6 million actual)** | | **None** | **$0** |

8.      Debtor's disclosure of the balloon payment grossly underestimates the balloon payment by approximately $600,000.  The actual balloon payment, using Debtor's proposed interest rate, would be $2,621,107.40. (*See* Donahue Decl., ¶ 10.)

9.      Thus, during the first 7 years of the Plan, the Plan intends to pay Harvest $1.128 million versus $2.446 million required under the Loan (even if one were <u>not</u> to consider loan acceleration from the due on sale clause) – less than half of the contract debt service during the most critical period.  It further replaces steady amortization with a massive balloon payment, which does not exist under the Loan and without any disclosure on how that will be paid, shifting all risk of speculative refinancing or a payment on Harvest.

3

Objection to Disclosure Statement

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

## III.  OBJECTIONS

### A.  Debtor's Disclosure Statement Fails to Provide Adequate Information as Required By Section 1125 of the Bankruptcy Code and Should be Denied

A disclosure statement must provide sufficient information to allow a hypothetical investor to make an informed judgment about the Plan.  *See* 11 U.S.C. § 1125(a)(1); In re Unichem Corp., 72 B.R. 95, 96 (Bankr. N.D. Ill. 1987) (finding that approval of a disclosure statement requires that a court must first determine that it contains "adequate information").  In other words, adequate information means that the disclosure statement must clearly and succinctly inform the average creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."  In re Ferretti, 128 B.R. 16, 19 (Bankr. D. N.H. 1991).  This determination is made on a case-by-case basis.  *See* In re Scioto Valley Mortg. Co., 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988).

Relevant factors in evaluating the adequacy of a disclosure statement include, among other things: (1) the events which led to the filing of the bankruptcy petition; (2) the anticipated future of the company; (3) the present condition of the debtor while in Chapter 11; (4) the estimated return to creditors in a Chapter 7 liquidation; (5) the future management of the debtor; and (6) information relevant to the risks posed to creditors under the plan.  *See, e.g.,* In re Scioto, 88 B.R. at 170; In re Cardinal Congregate I, 121 B.R. 760, 765 (Banr. S.D. Ohio 1990); In re Metrocraft Publishing Services, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); In re Reilly, 71 B.R. 132, 134 (Bankr. D. Mont. 1987).

In sum, material facts concerning the nature, maturity, and enforceability of a secured creditor's claim are indispensable.  The omissions here are not simply "technical," but go to the core of the Debtor's right to propose a Plan on these terms at all.

#### 1.  The Disclosure Statement Fatally Omits the Pre-Petition Merger and Resulting Due-on-Sale Acceleration

Because the debt matured pre-petition, the Disclosure Statement's assumption that the loan remains long-term is fatal, rendering the disclosures of the Plan inconsistent and misleading.

The pre-petition merger – 5 days before the Petition Date – constituted a "sale or transfer"

4

Objection to Disclosure Statement

under Harvest's DOT.  The pertinent language of the DOT is contained in the snapshot below and expressly provides that the Due on Sale clause is triggered by any "sale or transfer," which "also includes any restructuring of the legal entity (**whether by merger**, division or otherwise) or any change in ownership. . . ."  (Emphasis added.)

> **DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(Yoo Decl., Dkt. 66, ¶¶ 7-8, Ex. 3.)  Due on sale clauses are enforceable in bankruptcy and under California law, "are a fundamental aspect of a mortgagee's rights," and are essential to a lender's right to evaluate a borrower's character and credit worthiness.  *See, e.g.,* In re TM Vill., Ltd., No. 18-32770-BJH, 2019 WL 1004571, at \*9 (Bankr. N.D. Tex. Feb. 28, 2019) (finding in a Chapter 11 case that "due-on-sale clauses are enforceable in bankruptcy"); In re Anthony's Rest., Inc., 44 B.R. 542-43 (Bankr. E.D. Pa. 1984) (upholding a due on sale clause in a Chapter 11 case and finding that "under bankruptcy law, the 'due-on-sale' provisions prevent the debtor from selling its assets under and subject to mortgagee's mortgage"); In re Espanol, 509 B.R. 422 (D. Conn. 2014) (holding that mortgagee could assert rights under due-on-sale clause as "cause" for relief from automatic stay, that the actions in that case illustrate why "due on sale clauses" are contained in mortgage documents, and that the debtor who violated the due-on-sale clause could not cure mortgage defaults through Chapter 13 plan over the mortgagee's objection); In re Mullin, 433 B.R. 1 (2010) (due on sale clauses are a "'fundamental aspect of a mortgagee's rights'" and valid and enforceable) (citing In re Tewell, 355 B.R. 674, 680 (Bankr.N.D.Ill.2006)); Santa Clara Savings & Loan Assn. v. Pereira, 164 Cal.App.3d 1089, 1094 (1985) (providing that due on sale clauses are enforceable under California law where they are reasonably necessary to protect against impairment to a lender's security or the risk of default); *see also* In re Wallen, 15 B.R. 559, 562 (Bankr. C.D. Cal. 1981) (finding no federal preemption of California's "due on sale" clause law).[2]

---

[2] Notably, the Garn-St. Germain Depository Institutions Act of 1982 ("Garn Act"), 12 U.S.C. § 1701j-

5

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

The purpose behind the due on sale clause is to enable a lender to make an informed determination about impairment of security or increased risks of default. Santa Clara Savings & Loan Assn., 164 Cal. App. 3d at 1094. Specifically, a

> due on sale clause function[s] to permit lenders to evaluate the credit history, income, and other characteristics of prospective purchasers of the real estate and to refuse to finance those whose characteristics are unsatisfactory under the lender's loan underwriting criteria ... it is crucial for the lender to be able to avoid the increased risk of default that an uncreditworthy purchaser permits. In effect, the due on sale clause permits the lender to determine if the proposed grantee of the property lacks the personal and financial qualities that we would find acceptable in a new borrower.

In re Mullin, 433 B.R. at 3 (citation and internal quotation marks omitted).

As a result of the pre-petition merger, the due-on-sale clause was triggered, accelerating all indebtedness and effectively maturing the debt pre-petition. Neither Neilson nor the Debtor sought Harvest's consent for the merger for the very reason that it impairs Harvest's security and led to further default. The Disclosure Statement omits that the debt matured by operation of the contract pre-petition, and the Debtor fails to propose any terms for payment of an already-matured secured claim.

This is critical to the Disclosure Statement because approval of the Disclosure Statement would solicit votes based on a false premise—that Harvest's loan remains long-term and unaccelerated. Creditors cannot evaluate whether the Plan lawfully restructures matured debt, or whether a cramdown is even available under these circumstances. Courts routinely deny approval where a disclosure statement omits material acceleration or enforcement issues affecting secured claims, and the Court should do so here.

**2. The Disclosure Statement Improperly Assumes the Availability of Cramdown Relief under Section 1129(b) of the Bankruptcy Code**

The Disclosure Statement discloses that the Debtor intends to confirm the Plan over the objection of impaired classes pursuant to 11 U.S.C. § 1129(b). (Disclosure Statement, § IV.A.7.) However, it fails to provide adequate information concerning whether cramdown relief is available in

---

3 codifies a lender's right to exercise a "due on sale" clause, as expressly governed by terms of the loan contract.)

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

Objection to Disclosure Statement

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

this case, instead improperly assuming—without disclosure or evidentiary support—that such relief may be imposed as a matter of course.

Cramdown under § 1129(b) may be invoked only if a plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, dissenting class. 11 U.S.C. § 1129(b)(1). With respect to secured claims, the "fair and equitable" requirement mandates, at a minimum, that the secured creditor receive deferred cash payments totaling the allowed amount of its claim, having a present value at least equal to the value of the creditor's interest in the collateral. 11 U.S.C. § 1129(b)(2)(A)(i)(II).

Rather than disclosing how these statutory requirements will be satisfied, the Disclosure Statement presumes the Debtor may:

- De-accelerate and restructure a loan that matured pre-petition by operation of the due-on-sale clause;

- Impose a new 30-year repayment term on a secured creditor;

- Reduce the contractual interest rate from 9.89% to 6.5% without any market or risk adjustment analysis;

- Significantly suppress debt service during the critical early years of the Plan; and

- Force acceptance of a speculative balloon payment exceeding $2.6 million decades in the future—without disclosing any mechanism for funding that obligation.

The Disclosure Statement also fails to disclose the substantial risks imposed on Harvest by the proposed cramdown structure, including:

- The extraordinary lack of creditworthiness of the Debtor;

- Extreme market risk and market instability affecting Loan payments and Property valuation over the next 30-years;

- Costs of maintaining the Property during this time;

- The absence of any meaningful amortization and payments for much of the Plan term (including the early critical years);

- The speculative nature of the balloon payment and the absence of any refinance or sale assumptions; and

Objection to Disclosure Statement

• Debtor's demonstrated lack of meaningful liquidity and cushion to withstand market deviations (as further discussed below in Section III.A.4).

The Disclosure Statement therefore fails to provide "adequate information" on how the statutory requirements under § 1129(b) can be met to permit cramdown relief, and the Disclosure Statement should be denied.

### 3.    The Disclosure Statement Provides a Flawed Liquidation Analysis, as Required by Section 1129(a)(7) of the Bankruptcy Code

The Disclosure Statement discloses a flawed liquidation analysis (*see* discussion in Section IV.B. below).  It claims that secured creditors will be paid 100% to asset value, but that is false.  As set forth below under the best interest of creditors test in Section B.2, if the Property were liquidated today, Harvest would be paid in full.  Under the Plan, payment is uncertain and speculative, at best, with an extreme risk of default.

### 4.    The Disclosure Statement Provides a Flawed Feasibility Analysis, as Required By 1129(a)(11) of the Bankruptcy Code

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11). Although feasibility is formally determined at confirmation, a disclosure statement must provide adequate information demonstrating that feasibility is plausible and grounded in realistic financial assumptions. Where a disclosure statement omits critical facts necessary to assess feasibility, approval must be denied.

Debtor fails in its feasibility disclosures by failing to disclose any plan to fund the balloon payment in 30 years.  "Even under § 1129(a)(11), courts are required to determine whether a sufficient refinancing or sale is reasonably likely to occur where a debtor intends to fund future balloon payments in that manner."  In re Curiel, 651 B.R. at 567.  Where a plan depends on a large future balloon payment, courts require some evidentiary basis demonstrating that such payment is reasonably likely to be funded when due. *See, e.g.,* F.H. Partners v. Investment Co. of the Southwest, Inc. (In re Investment Co. of the Southwest, Inc.), 341 B.R. 298, 311–16 (10th Cir. 2006); In re Curiel, 651 B.R. 548, 564–67 (B.A.P. 9th Cir. 2023). "Sheer optimism and hopefulness, without more, is not

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

Objection to Disclosure Statement

sufficient." Curiel, 651 B.R. at 565.

At the same time, the Disclosure Statement fails to disclose the Debtor's true financial situation, which can be gleaned from its Monthly Operating Reports ("MORs").

The Disclosure Statement asserts that the Debtor will have approximately $150,000.00 cash on hand as of the Plan's Effective Date. This representation is contradicted by the Debtor's own MORs (shown below), which show that the Debtor has never maintained that level of liquidity post-petition and most recently reported only $54,790 in cash on hand. "Courts routinely scrutinize MORs to test the credibility of feasibility projections." In re Curiel, 651 B.R. at 564.

Importantly, the Disclosure Statement fails to disclose that whatever liquidity the Debtor presently has exists only because it has not paid Harvest for over one year. If the Debtor had applied the undisputed arrearages to Harvest's debt ($451,515.68), it would have no meaningful cash cushion at all.

| MOR Ending | Cash Balance | Docket No./Filing Date | Receipts | Disbursements | Profit/Loss (Operations) |
|---|---|---|---|---|---|
| 09/30/2025 | $49,130 | 122, 2/26/26 | $242,122 | $222,150 | $-95,703 |
| 10/31/2025 | $69,101 | 123, 2/26/26 | $326,875 | $282,821 | $-147,087 |
| 11/30/2025 | $113,155 | 124, 2/26/26 | $345,811 | $385,942 | $-140,897 |
| 12/31/2025 | $73,025 | 125, 2/26/26 | $463,907 | $404,810 | $-241,671 |
| 1/31/2026 | $132,121 | 126, 2/26/26 | $399,095 | $476,426 | $-238,930 |
| 2/28/2026 | $54,790 | 140, 4/6/26 | $606,612 | $595,756 | $-209,393 |

The Debtor's MORs further demonstrate that, on a month-to-month basis, the Debtor continues to operate at a loss or with only a negligible surplus after disbursements, even before accounting for any payments to Harvest.  Disbursements either exceed receipts or no meaningful reserves are being generated.  In short, the MORs undermine Debtor's projections.  In re Curiel, 651 B.R. at 565 ("Curiel's MORs undermine her projections.").

Despite this, the Disclosure Statement assumes that the Debtor can sustain a 30-year payment stream with increasing debt service obligations on razor-thin margins without any meaningful buffer against market volatility, inflation, or unexpected expenses. These omissions prevent creditors from

9

evaluating whether "minor deviations," which are inevitable over a 30-year horizon, will result in default.

The Disclosure Statement also projects monthly revenue in the range of $340,000.00–$360,000.00, despite the Debtor's MORs and schedules reflecting higher historical receipts.[3] The Debtor acknowledges that it is intentionally projecting lower revenue as part of a purported new business strategy focused on higher margins.  (*See* Disclosure Statement, footnote "Cash Receipts-Revenue," p. 57.)  In other words, Debtor is not projecting lower revenue because the business cannot generate more, but because it chooses to constrain revenue projections (and cash flow) to justify a reduced debt service and support a back-loaded payment structure.

Debtor's voluntary revenue constraints increase recession risk (i.e., it will lack the flexibility and cash flow to respond to a downturn, increasing default risk), exacerbate balloon-payment risk, and undermine feasibility—none of which are disclosed.  Bankruptcy does not entitle a debtor to optimize its business for equity holders while forcing lenders to carry the long-term risks, which risks are inadequately disclosed.  The Disclosure Statement should not be approved.

**5.    The Disclosure Statement Fails to Disclose That Contractual Attorneys' Fees and Costs Cannot be Nullified in a Plan**

Debtor discloses that any contractual provision for attorneys' fees entered into pre-petition or through the Plan's Effective Date are nullified with no legal effect. (*See* Article II.C.1.)   Of course, that excludes Debtor's counsel's fees and costs, which Debtor intends to pay at $50,000. (*See* Article II.Class.1.)

Debtor fails to disclose, however, that that provision violates the law.  Under 11 U.S.C. § 506(b), oversecured creditors are entitled to reasonable attorneys' fees if contractually provided. 11 USCA § 506; In re Dalessio, 74 B.R. 721, 723 (1987) ("We agree that when fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory."); In re Kord Enters. II, 139 F.3d 684, 687 (9th Cir. 1998) ("An oversecured creditor need

---

[3] Notably, Debtors Schedules reflect gross revenue in 2024 of $465,830.73 (totaling $5,589,968.84) and in 2023 of $559,800.90 (totaling $6,717,610.87), showing a large deviation from prior years when Harvest agreed to make the loan in January 2024.  *See* Statement of Financial Information ["SOFA"],

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

only satisfy the explicit requirements of § 506(b) to obtain attorneys' fees."); In re Melbell Assocs., Inc., 99 B.R. 31, 35 (Bankr. E.D. Cal. 1989) ("Generally, allowance of attorneys' fees and cost is *mandatory* when they are provided for in the underlying agreement, when the creditor is oversecured, and so long as those fees and costs are 'reasonable'").

Section 506(b) provides that to the extent an allowed secured claim is secured by property whose value (after any recovery under subsection (c)) exceeds the claim amount, there shall be allowed to the holder interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose.  11 U.S.C. § 506.  In In re Dalessio, the Ninth Circuit Bankruptcy Appellate Panel established that when fees are provided in the underlying agreement and the creditor is oversecured, allowance of attorney fees is mandatory.  74 B.R. at 723; *see also* In re Circle K Corp., 165 B.R. 649 (1994); Kord Enterprises II, 139 F.3d at 687-88.  The Disclosure Statement cannot be approved with this language in the Plan.

### 6.  The Disclosure Statement Discloses an Inappropriate Burden on Secured Creditors to File Amended Claims

Debtor discloses that any fees and charges not included in an amendment to a claim within 30 days of the Effective Date will be disallowed (Article II.C.1.).  But, liens ride through bankruptcy (*see, e.g.,* Hewit v. Berlin Mach. Works, 194 U.S. 296, 302 (1904) [liens remain undisturbed]) and fees and costs continue to accrue under terms of secured creditors' loan documents for oversecured creditors (*see* §506(b); In re Melbell Associates, Inc., 99 B.R. at 36).  Debtor presents no basis or authority to disallow fees and costs if the secured creditor fails to file an amended claim or files an amended claim and further fees and costs continue to accrue after that amended claim is filed.  This would unlawfully cut off an oversecured creditors' right to recover further fees, costs, and interest that accrue until a loan is paid in full. The Disclosure Statement should not be approved with this language in the Plan.

### 7.  The Disclosure Statement Discloses Improper Third-Party Releases

Harvest joins in the objection of the United States Trustee to the Debtor's Disclosure Statement (Dkt. 144) concerning the Debtor's exculpation clause and third-party releases against the Debtor's

No. 1, Dkt. 1.

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

professionals, under cases such as *Harrington v. Purdue Pharma L.P*, 603 U.S. 204 (2024) (holding that a plan cannot release claims against non-debtor third parties without the consent of affected claimants).  (*See* Disclosure Statement, Article V.)  The Disclosure Statement cannot be approved with this language in the Plan.

**B.    Approval of the Debtor's Disclosure Statement Should be Denied as the Debtor's Plan is Patently Unconfirmable.**

The Court may refuse to permit solicitation of a plan if, based on the proposed disclosure statement, it determines that the proposed plan violates applicable provisions of the Bankruptcy Code. In re Beyond.com Corp., 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); In re Main Street AC, Inc., 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999). "If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation." In re Arnold, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012) (citing In re Silberkraus, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000); In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986); *see also,* In re Cardinal Congregate I, 121 B.R. at 764 (disapproval of the adequacy of a disclosure statement may be appropriate "where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible.").  "Not only would allowing a non-confirmable plan to accompany a disclosure statement and be summarized therein constitute inadequate information, it would be misleading and it would be a needless expense to the estate."  In re Arnold, 471 B.R. at 586.

To confirm a plan, the plan proponent bears the burden of proof with respect to each and every element under Bankruptcy Code § 1129(a).

**1.    The Plan is Not Feasible Under 1129(a)(11) of the Bankruptcy Code**

A debtor must establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."  Pizza of Hawaii v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11] at 1129-34 (15th

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

12

ed. 1984)); see also In re A Partners, LLC, 344 B.R. 114, 126 (Bankr. E.D. Cal. 2006).

In determining whether a proposed plan is feasible, courts consider a debtor's cash projections, which show the debtor's ability to make plan payments while funding its operations. Such projections "must be based on evidence of financial progress and must not be speculative, conjectural, or unrealistic." F.H. Partner v. Investment of the Southwest, Inc. (In re Investment Co. of the Southwest, Inc.), 341 B.R. 298, 311 (10th Cir. 2006) (citing In re Trevarrow Lanes, Inc., 183 B.R 475, 482 (Bankr. E.D. Mich. 1995)). A debtor must proffer some evidence to explain how balloon payments will be reasonably funded at the time they become due. Id. at 316.

The Plan will result in liquidation. There is no disclosure whatsoever on how the Debtor will fund the balloon payment at the end of 30-years (which is about $600,000 higher than projected under the Plan), or Plan payments from years 8-30 when they increase to $25,000.00 per month.

As set forth above, the Plan also relies on improper liquidity assumptions. Debtor's cash reserves are not based solely on revenue, but on the fact that it has accumulated cash that should have been applied to service debt to Harvest over the course of the past year. Moreover, Debtor's cash on hand at the time of the Effective Date is higher than any cash on hand reported in the Debtor's MORs. Finally, under the MORs, Debtor's disbursements each month have either exceeded its receipts or resulted in a nominal cushion after disbursements, which did not include any payments to Harvest. Thus, any minor deviation will result in defaults under the Plan and liquidation.

**2. The Plan is Not in the Best Interest of Creditors as Required by Section 1129(a)(7) of the Bankruptcy Code**

Section 1129(a)(7) requires that each holder of a claim in a class that does not accept the plan "receive or retain … property of a value … that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 …" 11 U.S.C. § 1129(a)(7)(A)(ii). The so-called "best interest of creditors test" of section 1129(a)(7) is "one of the cornerstones of chapter 11 practice … [and] is an individual guaranty to each creditor or interest holder that it will receive at least as much in reorganization as it would in liquidation." 7 Collier on Bankruptcy ¶ 1129.02[7] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

If the Property were liquidated today, Harvest would be paid in full. Under the Plan, payment

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

13

is uncertain and speculative, at best, with an extreme risk of default.

The Plan provides that secured creditors will receive a 100% recovery "to asset value" in liquidation. (*See* Article X, Liquidation Analysis ("See the Disclosure Statement"); Disclosure Statement Article IV.B). This assertion is misleading. In liquidation, Harvest would realize the full value of its collateral immediately, allowing Harvest to recover its claim (including accrued interest and allowable fees) without assuming long-term market, operational, or refinancing risk.

By contrast, the Plan replaces immediate realization of existing equity with a protracted, lending arrangement that dramatically alters the risk profile of Harvest's claim. Payment is speculative at best with 30-year exposure, and ultimate repayment depends on a large balloon payment three decades in the future—without any disclosed mechanism for funding that obligation.

The best-interest test does not permit Debtor to substitute certainty for speculation. Thus, the Plan is not in the best interest of Harvest, the senior secured creditor of the operating property, and the Plan is patently not confirmable.

### 3. The Plan Is Not Fair and Equitable Under 1129(b)(2)(A) of the Bankruptcy Court

A Plan cannot be confirmed over a dissenting class (cram down) unless it is "fair and equitable," which requires meet the requirements of

> (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; or
> ***
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A). These "are [non-exclusive] minimum requirements, and the court may consider a plan not fair and equitable even though it appears to meet the statutory requirements of that section." In re Miami Ctr. Assocs., Ltd., 144 B.R. 937, 940 (Bankr. S.D. Fla. 1992).

The Plan is not fair and equitable or confirmable over Harvest's objections for numerous reasons, including but not limited to the Plan's:

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

- Failure to treat Harvest's fully matured debt under the due on sale clause;

- Improper extension of the effective maturity of the Loan, creating an unfair risk to Harvest based on impermissible speculation of market conditions over the next 30-years.  See Fed. Savs. & Loan Ins. Corp. v. D & F Constr., Inc. (In re D & F Constr. Inc.), 865 F.2d 673, 676 (5th Cir. 1989) (deferring repayment of principal for 15 years could only be considered reasonable if one speculates that the present condition of the real estate market would improve substantially but that was impermissible speculation and the plan was not fair and equitable).

- Failure to proffer any evidence of how the balloon payment will be reasonably funded at the time it becomes due in three decades (and relying on impermissible speculation of the Property value in 30-years). See, e.g., In re Investment Co. of the Southwest, Inc., 341 B.R. at 311; In re Curiel, 651 B.R. at 564;  In re Las Vegas Monorail Co., 462 B.R. 795.

- Inability to satisfy the present value of Harvest's claim.  The payment structure is heavily back-loaded with payments far below contractual debt service payments during the first 7 years.  To satisfy the present value of its claim requirement, "the amount of each installment must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim." Till v. SCS Credit Corp., 541 U.S. 465, 469 (2004).  In a Chapter 11, the Court asks what rate an "efficient market" would produce.  Id. at 477 n.14.  In other words, the Supreme Court acknowledged that secured creditors objecting to a plan should be compensated for their risk.  Id. at 480.  Harvest is not in any way compensated for its extreme risk in the Plan, with dramatically reduced loan payments and interest rate and a large balloon payment at the end without any way to fund it (and which is nonexistent under the Loan terms).

- Imposition of an artificial interest rate reduction from 9.89% to 6.5% without any risk premium or disclosure of why the rate would be less than prime, without a risk premium.  A market rate of interest must consider the terms and risk borne by the affected creditor, and confirmation must be denied if the rate does not account for the actual risk of that loan. See, e.g., In re Linda Vista Cinemas, L.L.C., 442 B.R. 724, 748 (Bankr. D. Ariz. 2010).  Under Till, that means a national prime rate with a risk premium.  541 U.S. 465.  Debtor's interest rate is below the current national prime rate of 6.75% as of April 2026, and fails to take into account any risk premium, which given the extreme

15

Objection to Disclosure Statement

risk in this case, should be 3% for a rate of no less than 9.75%. Id. at 466 (risk adjustments may be approved up to 3%).

In short, the Debtor's Plan does not pass the scrutiny required to confirm it – the obvious reason for the Debtor's bankruptcy filing is to cramdown Harvest (and other secured creditors) into extremely unfavorable terms to which it could not agree pre-petition. The Plan is not confirmable, and votes should not be solicited.

### 4. The Plan Improperly Shifts the Burden on Creditors Upon Default

Upon confirmation of a plan, the automatic stay terminates and a discharge and/or injunction takes its place. 11 U.S.C. §§ 524, § 362(c)(2)(C), and 1141(d). Under 11 U.S.C. § 1142, plans can be self-executing.

Debtor seeks to impose a duty on creditors to bring a motion to dismiss or convert upon a Plan default, incurring further time and costs. Any plan should incorporate language that, upon a monetary default that is not cured within 10 days of receipt of notice of the same and nonmonetary default within 30 days of receipt of notice of the same, the discharge injunction shall be automatically lifted and the creditor, including Harvest, is entitled to exercise all of its non-bankruptcy rights and remedies without further notice or court order required. Upon a third notice of default, no right to cure should be required, and the discharge injunction should be automatically lifted upon the date that the notice is provided.

## IV.    RESERVATION OF RIGHTS

Harvest hereby reserves its rights to object to any proposed modifications to the Disclosure Statement or the Plan, whether proposed by the Debtor or any other party in interest, and expressly reserves its rights to supplement this Objection.

## V.    CONCLUSION

For the reasons provided herein, and those to be presented at a hearing hereon, the Disclosure Statement should not be approved.

//

//

16

Dated: April 29, 2026

HEMAR, ROUSSO & HEALD, LLP

/s/ *Jessica Mickelsen Simon*

BY: _____

JESSICA M. SIMON
Attorneys for Creditor,
HARVEST SMALL BUSINESS FINANCE, LLC

Objection to Disclosure Statement

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
15910 Ventura Blvd., 12th Floor, Encino, CA 91436

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION OF HARVEST SMALL BUSINESS FINANCE, LLC TO DEBTOR'S ORIGINAL DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 29, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ronald Appel    attorneyrappel@gmail.com**
- **Steven R Fox    emails@foxlaw.com**
- **Elan S Levey    elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov**
- **Dave Shenian    dshenian@clarkhill.com, ntaylor@clarkhill.com**
- **David Samuel Shevitz    David.S.Shevitz@usdoj.gov**
- **Jessica M. Simon    jsimon@hrhlaw.com, mgranzow@hrhlaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **April 29, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Debtor**
Presentation Media, Inc.
1916 W. 144th Street
Gardena, CA 90249

**3.  SERVED BY PERSONAL DELIVERY** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 29, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Chambers' Copy:**
Hon. Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 29, 2026 | MARY ANN GRANZOW | /s/ *MaryAnn Granzow* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.